IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Erica S. Berman,<br><br>        Plaintiff,<br><br>v.<br><br>The County of Lake,<br><br>        Defendant. | No. 21 CV 6517<br><br>Honorable Nancy L. Maldonado |

## **MEMORANDUM OPINION & ORDER**

In an Amended Complaint, Plaintiff Erica Berman brings claims against Defendant the County of Lake ("the County"). (Dkt. 21.)[1] The County has filed a motion to dismiss Berman's Amended Complaint for failure to state a claim. (Dkt. 23.) For the following reasons, the County's motion is denied. The County shall file its answer to Berman's Amended Complaint by October 13, 2023. The stay of discovery is lifted. By October 6, 2023, the parties shall submit a joint status report with a proposed agreed-upon discovery schedule.

### **Background**

Berman, a former employee of the County, alleges that the County discriminated and retaliated against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.,* and violated her rights under the FMLA, 29 U.S.C. §§ 2601 *et seq*. (Dkt. 21.) Specifically, Berman claims that the County: (1) discriminated against her because of her disability by denying her a promotion, failing to accommodate her disability, and subjecting her to a hostile

---

[1] Referenced page numbers are taken from the CM/ECF header.

1

work environment; (2) retaliated against her by denying her a promotion and subjecting her to a hostile work environment when she requested a reasonable accommodation; (3) interfered with her rights under the FMLA; and (4) retaliated against her for using FMLA leave. (Dkt. 21 at 5–10.)

To support these claims, Berman alleges the following facts in her complaint, which the Court accepts as true for the purposes of considering the instant motion to dismiss. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). The County hired Berman as a Human Resources ("HR") Project Manager on October 18, 2016. (Dkt. 21 ¶ 9.) In June 2019, HR Director Rodney Marion told Berman that she would be promoted to HR Operations Manager in December 2019 and that this position would include a 10% pay increase. (*Id*. ¶ 12.)

In October 2018, Berman was diagnosed with rheumatoid arthritis, which is a recognized disability that "substantially limited her in various daily life activities" such as "sleeping, caring for [her]self, eating (due to rheumatoid arthritis in her jaw), lifting, sitting, bending, etc." (*Id*. ¶¶ 10–11.) Due to episodic flare-ups of her disability, in or around October 2019, Berman requested intermittent FMLA leave of up to one occasion per week, to last up to one day per occasion, which was processed through the County's third-party FMLA administrator. (*Id*. ¶ 13.) In addition to requesting intermittent leave, Berman believes her "FMLA request also mentioned/suggested that [Berman] may need to work remotely on occasion," which the County had allowed before Berman notified the County of her disability and need for "accommodation/FMLA leave." (*Id*. ¶ 14.) The County's third-party administrator approved Berman's request for intermittent FMLA leave. (*Id.* ¶ 15.)

In October 2019, Berman also notified her manager, Christine Kopka, of her disability and request for intermittent leave. (*Id.* ¶ 16.) Berman alleges that upon notifying her manager, the County began retaliating against her. (*Id.* ¶ 17.) Specifically, Berman was excluded from two meetings related to her position and duties and accused of paying unapproved invoices, which was not true. (*Id.* ¶¶ 18, 19.) Further, Kopka gave Berman an unwarranted performance improvement plan on December 9, 2019, even though she had never been counseled regarding her performance in the past and Kopka had given her a positive performance evaluation in November 2019. (*Id.* ¶ 20.) According to Berman, the performance improvement plan criticized her for the instances she requested to work from home or took leave due to her disability despite that Berman's "work from home and leave did not cause any issues or hardship for [the County]" and were no different from the instances Berman had previously worked from home prior to informing the County of her disability and need for intermittent leave. (*Id.* ¶ 21.)

At the meeting during which the County gave Berman the performance improvement plan, Kopka also told Berman that she could no longer work from home and further "suggested that [Berman] look for a new job on LinkedIn as it was a 'candidate's market.'" (*Id.* ¶ 22.) Berman emailed Kopka and the HR Director the next day to confirm that she was no longer allowed to work from home and to ask whether this change applied only to her or to all HR employees, but Berman did not receive a response. (*Id.* ¶ 24.) Kopka also informed Berman at the same meeting that the HR Director "would no longer be moving forward" with the promotion to HR Operations Manager. (*Id.* ¶ 23.) Berman further alleges that Kopka discussed Berman's intermittent leave with three other co-workers, telling them that Berman had been written up for attendance and that Berman was "stealing time' on her timecards, which Berman alleges is untrue. (*Id.* ¶ 25.)

On December 11, 2019, Berman complained to the County Administrator "that she was being retaliated against for requesting FMLA leave and because of her disability." (*Id*. ¶ 26.) On December 18, 2019, Berman discussed her complaint with the County attorneys, who said they would follow up with her but never did. (*Id*.) On December 26, 2019, Berman took a continuance of FMLA leave "due to the stress, anxiety, and depression caused by" the County's allegedly retaliatory conduct. (*Id*. ¶ 27.) While on leave, Berman received emails and voicemails from the HR Director, which she alleges were harassing, regarding "supposed incomplete FMLA paperwork." (*Id*. ¶ 28.)

While Berman was on FMLA leave, the County notified her that when she returned to work, she would be transferred to the County's office in Waukegan. (*Id*. ¶ 29.) While Berman's commute to her prior office was five minutes long, her commute to the Waukegan office would be approximately 25 minutes. (*Id*.) Additionally, the parking spaces, including handicapped spaces, often filled up at the Waukegan office, which would require Berman to use an overflow parking lot located down the street. (*Id*.) The longer commute to the Waukegan office and concerns about parking "would have been a tremendous hardship to [Berman] due to her disability as she experienced considerable pain while driving." (*Id*.) Rather than returning to work at the Waukegan Office, Berman resigned in June 2020 and alleges the County constructively terminated her. (*Id*. ¶ 30.) Berman ultimately alleges that the County did not provide her with the accommodation/FMLA leave she needed or disciplined her for taking leave, and therefore engaged in retaliation and created a discriminatory hostile work environment. (*Id*.) The County filed this instant motion to dismiss all counts in Berman's complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Berman fails to state a claim. (Dkt. 23.)

**Discussion**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss under Rule 12(b)(6) to challenge the sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court views the complaint as a whole and draws all reasonable inferences from the facts alleged in the plaintiff's favor. *Kubiak*, 810 F.3d at 480–81; *see Olson v. Champaign Cnty.*, 784 F.3d 1093, 1100–01 (7th Cir. 2015). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Specifically for employment discrimination claims, this pleading standard "means a plaintiff must advance plausible allegations that she experienced discrimination because of her protected characteristics." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022).

A.  **ADA Discrimination Claim**

The County argues that Berman failed to state an ADA discrimination claim based on a failure-to-promote theory because she did not plead "that she applied for the position, was qualified for the position, was rejected for the position, and that the position went to someone else," which are prima facie elements for such claims under the ADA through indirect evidence. (Dkt. 23 at 4.); *see Conley v. Vill. of Bedford Park*, 215 F.3d 703, 711 (7th Cir. 2000). But Berman need not

establish a prima facie case for failure to promote at the pleading stage. *See Hickman v. Family Dollar, Inc.*, No. 21 C 833, 2021 WL 4401498, at *6 (N.D. Ill. Sept. 27, 2021). Instead, the Court must consider, based on the facts alleged, whether it is plausible that the County failed to promote her because of her disability.[2]

The Court here finds Berman's failure-to-promote claim plausible. Berman alleges that her former manager approached her regarding the position, supporting an inference that she was qualified, and that the County did not move forward with the promotion after she informed her supervisor of her disability. Failure-to-promote claims can ultimately be proven without a showing that the plaintiff actually applied for the position, if an application for the position would have been futile or was improperly withheld by the employer. *See Hickman*, 2021 WL 4401498, at *6 n. 2. Based on the facts alleged, it is plausible that the County denied her a promotion due to her disability.

The County, invoking Federal Rule of Evidence 201, then asks the Court to take judicial notice of a "Lake County Budget" chart, arguing that the position of Human Resources Manager promised to Berman was never approved or created. (Dkt. 23 at 4.) The chart is labeled "Fiscal Year 2020 Requests," and contains a list of "Personnel Related Requests Placed on Hold Pending the Compensation Study," which includes an entry stating, "Reclass Project Manager position at Grade K8 to HR Operations Manager at Grade M9." (Dkt. 27 at 10.) The Court declines to take

---

[2] Further, failure-to-promote claims have been recognized in this Circuit even where there has been no application. *See Fischer v. Avanade, Inc*., 519 F.3d 393, 402 n.2 (7th Cir. 2008)(stating that plaintiff who "allege[d] that there were discriminatory motives behind not announcing the position to her," needed only to show "had [her employer] approached her, she would have accepted the offered position.")(quoting *Loyd v. Phillips Bros., Inc*., 25 F.3d 518, 523 (7th Cir. 1994); *see also Teamsters v. United States*, 431 U.S. 324, 365–66 (1977) ( "When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application.").

judicial notice of the chart because it contains facts that cannot be judicially noticed under F.R.E. 201 and the County offered the chart on reply, depriving Berman of an opportunity to respond to its arguments.

Specifically, the County's budget and its personnel decisions are not "generally known within" this district, and the County's decision not to create the position of Human Resources Operations Manager and what might have influenced that decision cannot "be accurately and readily determined from" the chart alone. Fed. R. Evid. 201(b). Further, it is not clear whether the chart applies to Berman's former position given that the Amended Complaint does not specify that Berman's position was at "Grade K8." (Dkt. 27 at 10.) Finally, the Court finds it inappropriate to take judicial notice of the chart when Berman did not have a meaningful opportunity to respond to its presentation. No doubt the chart and whether the promised position was created will be a topic of discovery, and if not, a possible ground for summary judgment.

### B. ADA Failure-to-Accommodate Claim

The County argues that Berman failed to state a claim for failure to accommodate under the ADA both with respect to the requests for intermittent leave and the ability to work from home. Regarding intermittent leave, the County notes that Berman pleads that her request for intermittent leave was granted, but she also alleges that the County "was not providing [her] with the accommodation/FMLA leave she needed, at least without disciplining her," and that the County "denied [her] the requested accommodations of intermittent leave." (Dkt. 21 ¶¶ 15, 30, 37.) While Berman's Amended Complaint is not a model of clarity, the Court must consider the complaint as a whole and draw reasonable inferences in her favor. Thus, the Court is unwilling to dismiss or limit Berman's failure to accommodate claim regarding her request for intermittent leave since the

Amended Complaint suggests that the County denied this accommodation.

Regarding Berman's claim that she was denied the reasonable accommodation of working from home, the County argues that Berman failed to plead that she requested this accommodation from the County, but rather, she submitted her request to the County's third-party FMLA administrator. Berman, however, alleges that the County gave her a performance improvement plan which "essentially criticized [her] for occasions where *she had requested to work from home* or took leave due to her disability." (Dkt. 21 ¶¶ 20, 21) (emphasis added). Berman pleads that the County knew of her disability, she requested to work from home, and that she was criticized and eventually prohibited from doing so. The Court therefore draws a reasonable inference that the County failed to reasonably accommodate Berman's disability.

Berman further defends her failure to accommodate claim on the ground that the County failed to engage in "an 'interactive process' to determine the extent of the disability and what accommodations [were] appropriate and available." *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 804 (7th Cir. 2005) (citation omitted). The Seventh Circuit has observed that "[i]dentifying reasonable accommodations for a disabled employee requires both employer and employee to engage in a flexible, interactive process. . . . If a reasonable accommodation was available but the employer prevented its identification by failing to engage in the interactive process, that failure is actionable." *Brown v. Milwaukee Bd. of Sch. Dirs.*, 855 F.3d 818, 821 (7th Cir. 2017) (citations omitted). Berman alleges that Kopka told her she could no longer work from home at a meeting on December 9, 2019, and that her follow-up communications with the County on this matter were ignored until she took a continuance of FMLA leave on December 26, 2019. (Dkt. 21 ¶¶ 22, 24, 26, 27.) The County argues that Berman failed to wait for a response regarding her request for an

8

accommodation. Based on the facts alleged, however, it is plausible that the County failed to engage in an interactive process to identify a reasonable accommodation for Berman. The Court therefore rejects the County's argument that Berman has failed to state a claim for failure to accommodate under the ADA.

### C. ADA Retaliation Claim

The County argues that Berman fails to state a claim that the County retaliated against her in violation of the ADA. To state a claim for retaliation under the ADA, Berman must allege: "1) that [s]he engaged in a statutorily protected activity; 2) that [s]he suffered an adverse employment action; and 3) that there was a causal link between the protected activity and the employer's action." *Prince v. Ill. Dep't of Revenue*, 73 F. Supp. 3d 889, 894 (N.D. Ill. 2010). The County specifically argues that Berman failed to allege any adverse employment action against her and that the facts she alleges do not show any causal connection between a protected activity and any adverse action. Berman alleges that her request for accommodations of intermittent leave and continued intermittent work from home was a protected activity and that the County retaliated against her by denying her a promotion and subjecting her to a hostile work environment. As the Court has already explained, the Court finds that Berman has sufficiently pled an adverse employment action of failure to promote. Also as discussed, the Court finds Berman has plausibly pled that the County denied her request for intermittent leave and the ability to work from home as an accommodation. Based on the facts alleged, the Court finds that Berman has plausibly pled a causal connection between the protected activity of requesting an accommodation in October 2019, and being denied a promotion in December 2019.

9

The County argues that "[a] causal link requires more than the mere fact that an employer's action happens after an employee's protected activity," but again, the County's arguments are premature. (Dkt. 23 at 11 (quoting *Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016)).) The Seventh Circuit has noted that "suspicious timing may be just that—suspicious—and a suspicion is not enough to get past *a motion for summary judgment*." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011) (emphasis added). At the motion to dismiss phase and with the additional allegations suggesting some hostility from the County regarding her intermittent leave and work from home (Dkt. 21 ¶ 25.), Berman has plausibly alleged that there was a causal connection between her request for accommodations and the denial of a promotion. The Court therefore rejects the County's motion to dismiss on this ground.

### D. Hostile Work Environment Claim

Throughout the Amended Complaint, Berman alleges that she was subjected to a hostile work environment, although she pleads this allegation within her claims for discrimination, failure to accommodate, and retaliation under the ADA as opposed to as a stand-alone claim. (*See* Dkt. 21 ¶¶ 35, 44.) The County argues that Berman fails to state a claim for hostile work environment and so the Court considers the County's arguments, even though the line between Berman's hostile work environment claim and other ADA claims is blurry at best. The County argues (1) Berman's allegations are workplace grievances that do not amount to harassment that is severe or pervasive enough to alter the conditions of employment; and (2) she fails to plead that any alleged harassment was because of her disability.

Under the ADA, "[a] hostile work environment exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter

10

the conditions of the victim's employment and create an abusive working environment.'" *Ford v. Marion Cnty. Sheriff's Office*, 942 F.3d 839, 851 (7th Cir. 2019) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (second alteration in original). For this analysis, courts consider "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 900 (7th Cir. 2018) (citation omitted). Further, courts consider "whether an environment was 'hostile' or 'abusive' . . . by looking at all the circumstances." *Harris*, 510 U.S. at 23. Here, Berman alleges some conduct that might be characterized as "workplace slights" such as the comments by Kopka to the other employees about Berman's use of intermittent leave. *Duminie v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 17-cv-3030, 2020 WL 1288876, at *7 (N.D. Ill. March 18, 2020). Such instances, however, considered alongside the other alleged actions against Berman, are sufficient to state a claim for hostile work environment at the pleading stage. Discovery ultimately will tell whether Berman can prove this claim, and Berman should refine her claims.

Regarding whether any harassment was because of Berman's disability, the Court finds that the Amended Complaint pleads enough to allow the Court to draw a reasonable inference that the alleged harassment was because of her disability. *See Ford*, 942 F.3d at 856 (listing the elements of a hostile work environment claim under the ADA, including that "the harassment was based on" plaintiff's disability). The alleged harassment occurred two months after Berman told her employer of her disability and requested accommodations. Further, Kopka's statements to Berman at the meeting during which she was given a performance improvement plan and to coworkers regarding Berman's use of intermittent leave implicate Berman's use of the

11

accommodations she sought for her disability. The facts alleged also support at least "some connection" between Berman's disability and the harassment as the comments were made around the same time Kopka told her that she would not be promoted. *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 896 (7th Cir. 2016) (citation omitted). The Court thus finds that Berman has pled sufficient facts to support a plausible claim that the alleged harassment was because of her disability.

### E. FMLA Interference and Retaliation Claims

#### I. FMLA Interference

In her Amended Complaint, Berman alleges that the County "interfered with [her] FMLA rights when it disciplined her for using approved intermittent FMLA leave, denied her a promotion, subjected her to a hostile work environment, transferred her to a different location, and constructively terminated her employment." (Dkt. 21 ¶ 52.) The County argues that Berman fails to state an FMLA interference claim because she did not allege that the County denied any FMLA benefit or denied her right to reinstatement. The County also argues that Berman took the 12 weeks of leave she was entitled to under the statute.[3] In response, Berman includes only one paragraph labeled "Plaintiff Has Stated Claims for FMLA Interference/Retaliation," which does not address her interference claim in substance. (Dkt. 26 at 12.)

---

[3] This Court will not consider several documents the County attached to its motion to dismiss including two letters to Berman indicating when she exhausted her leave and was expected to return to work. (*See* Dkt. 23 at 16–20.) Consideration of these exhibits would require the Court to treat this motion as one for summary judgment per Fed. R. Civ. P. 12(d), which further requires that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." The County has not requested that the Court convert this motion to one for summary judgment and Berman has not had a reasonable opportunity to present all material that is pertinent to her claims beyond the Amended Complaint. Therefore, the Court declines to consider the attached exhibits and treat this motion as one for summary judgment.

12

Despite Berman's anemic defense of her FMLA interference claim, the Court finds that she has plausibly pled a claim for FMLA interference. "Under the FMLA, it is 'unlawful for [an] employer to interfere with, restrain, or deny,' an employee's 'exercise of or . . . attempt to exercise[] any right provided under' the Act." *Preddie v. Bartholomew Consolidated School Corp.*, 799 F.3d 806, 816 (7th Cir. 2015) (quoting 29 U.S.C. § 2615(a)(1)) (alterations in original). An employer may interfere with an employee's rights under the FMLA by "us[ing] the taking of FMLA leave as a negative factor in employment actions" and "discouraging an employee from using such leave." *Id.* at 818 (quoting 29 C.F.R. § 825.220(c), (b)) (alteration in original). Here, Berman alleges that she was denied a promotion after commencing intermittent FMLA leave, which supports a plausible claim that the County took her FMLA leave as a "negative factor" when it denied her a promotion. *Preddie*, 799 F.3d at 818. The Court therefore denies the County's motion to dismiss Berman's FMLA interference claim.

**II. Economic Harm under the FMLA**

The County also argues that Berman's FMLA claims for interference and retaliation fail because Berman failed to plead any adverse employment action that caused her to suffer economic harm. As the County correctly notes, the enforcement provision of the FMLA "provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost 'by reason of the violation,' for other monetary losses sustained 'as a direct result of the violation,' and for 'appropriate' equitable relief . . . ." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (citing 29 U.S.C. § 2617(a)(1)(A)–(B)). As discussed earlier, the Court finds that Berman has sufficiently pled that the County denied her a promotion because she had taken intermittent FMLA leave and due to her disability. The

13

promotion, as alleged, would have given Berman a higher salary. Thus, Berman alleges an adverse employment action that caused her an economic injury for which her employer is liable if she prevails in her FMLA claims. The County's motion to dismiss is therefore denied on this ground.

### III. FMLA Retaliation

Although not clear, the County appears to argue that Berman fails to state a claim for retaliation under the FMLA by arguing that Berman has failed to plead a sufficient adverse employment action that caused her to suffer economic harm. (*See* Dkt. 23 at 12.) For the reasons already discussed, the Court finds that Berman has pled sufficient facts to support that she was denied a promotion that would have come with a raise. The Court thus denies the County's motion to dismiss her FMLA retaliation claim.

### IV. Statute of Limitations for FMLA Claims

Finally, the County argues that Berman's FMLA claims are barred by the statute of limitations. An action to enforce rights under the FMLA "may be brought . . . not later than 2 years after the date of the last event constituting the alleged violation," and an action for a willful violation of the FMLA's prohibition on interference with rights is subject to a three-year statute of limitations. 29 U.S.C. § 2617(c)(1), (2). "To benefit from the three-year statute of limitations in § 2617(c)(2), a plaintiff must show that her employer either knew the FMLA prohibited its conduct or showed reckless disregard for whether it did." *Sampra v. United States Dep't of Transp.,* 888 F.3d 330, 334 (7th Cir. 2018).

Berman's original complaint did not contain an FMLA claim and her Amended Complaint containing the present FMLA claims was filed on April 12, 2022. (Dkts. 1, 21.) The County argues that her claims are time-barred because (1) the alleged wrongful conduct occurred prior to April

14

12, 2020 and; (2) she fails to plead facts supporting that any FMLA interference was willful to warrant a three-year statute of limitations. As the County points out, Berman alleges she was denied a promotion in December 2019, which is outside the two-year limitations period. However, the Court finds that it is plausible that the County interfered with Berman's FMLA rights willfully, through either knowledge that its interference was unlawful or showing reckless disregard. Further, the statute of limitations is an affirmative defense, which a complaint need not "anticipate and overcome." *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674–75 (7th Cir. 2009); *see also Sidney Hillman Health Ctr. of Rochester v. Abbott Labys., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) ("As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment.") The Court therefore declines to dismiss Berman's FMLA claims as untimely.

## Conclusion

For the foregoing reasons, the County's motion to dismiss is denied. The County shall file its answer to Berman's Amended Complaint by October 13, 2023. By October 6, 2023, the parties shall submit a joint status report with a proposed agreed-upon discovery schedule.

ENTERED: 9/29/23

_____
Nancy L. Maldonado
United States District Court Judge

15